UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD C. FLORY, | ) |
| | ) |
| Plaintiff, | ) CASE NO.   C06-1046-RSL-JPD |
| | ) |
| v. | ) |
| | ) |
| DONALD CLAUSSEN, *et al.*, | ) REPORT & RECOMMENDATION |
| | ) |
| Defendants. | ) |

### INTRODUCTION & SUMMARY CONCLUSION

Plaintiff is currently incarcerated at the McNeil Island Corrections Center in Steilacoom, Washington. He was previously incarcerated in the Washington State Reformatory ("WSR") in Monroe, Washington. Plaintiff has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that he was improperly terminated from his job at WSR in December 2004. Defendants have filed a motion for summary judgment, to which plaintiff has filed a response. Having reviewed the parties' submissions, the court recommends that defendants' motion for summary judgment be granted and this action be dismissed.

### FACTUAL BACKGROUND

The court summarized the facts of this case in a previous Report and Recommendation that recommended denying a motion to dismiss filed by defendants.[1] (Dkt. #23). The parties' submissions regarding the motion for summary judgment do not materially change the court's prior

---

[1] This previous Report and Recommendation was adopted by the district court on November 21, 2006. (Dkt. #30).

REPORT & RECOMMENDATION
PAGE - 1

1  summary. Accordingly, the court will not repeat those facts here. In sum, it is undisputed that
2  plaintiff was terminated from his employment at WSR after his supervisor suspected him of
3  committing fraud by scanning another inmate's identification card into a time clock, which enabled
4  the other inmate to get paid for work he had never done. (Dkt. #37, Ex. 2).

5  Plaintiff was never subjected to a formal disciplinary hearing but the job termination was
6  upheld by the prison's "Facility Risk Management Team" ("FRMT"), comprised of four staff
7  members of the prison. (Dkt. #37, Ex. 4, Attachment A). Plaintiff's job termination was based upon
8  circumstantial evidence – the fact that plaintiff's time card and the time card of another inmate who
9  no longer worked at the prison were both scanned at the same time – as neither his supervisor nor the
10 FRMT interviewed any witnesses or conducted any investigation. Plaintiff did not suffer the loss of
11 any "good time" credit for the job termination, nor was he placed in disciplinary segregation.[2] (Dkt.
12 #37, Ex. 3 at 2). He has tried, without success, to regain his former job. He is now incarcerated at a
13 different prison and it is unclear whether he is currently employed.

## PROCEDURAL HISTORY

15 On August 18, 2006, plaintiff filed the instant civil rights complaint. (Dkt.#7). The
16 complaint alleges that plaintiff's termination from his job and the prison's subsequent refusal to
17 rehire him have violated his constitutional rights. (Dkt. #7 at 8). For relief, plaintiff seeks, among
18 other things, to have his job reinstated and to have all references to the time clock incident expunged
19 from his record. (*Id*. at 9).

20 On September 20, 2006, defendants filed a motion to dismiss, in which they asserted that
21 plaintiff's lawsuit should be dismissed because he had failed to exhaust administrative remedies.
22 (Dkt. #17). The court issued a Report and Recommendation recommending that the motion to
23 dismiss be denied and, as mentioned, the district court adopted this recommendation on November

---

[2] While plaintiff asserts that he was restricted to his cell as punishment for the time card fraud (Dkt. #38 at 4), it appears that this was not a sanction but rather was a consequence of his not having a job, and therefore, no reason to leave his cell. (Dkt. #37, Ex. 3 at 2).

REPORT & RECOMMENDATION
PAGE - 2

1   21, 2006. (Dkt. #30).

2   On March 23, 2007, defendants filed the instant motion for summary judgment. (Dkt. #37).
3   On April 17, 2007, plaintiff filed a response[3] to defendants' motion to dismiss (Dkt. #38) and
4   defendants have filed a reply. (Dkt. #40). The matter is now ready for review.

## DISCUSSION

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, __U.S.__, 127 S. Ct. 1769, 1776 (2007) (internal citation and quotation omitted). Conclusory allegations in legal memoranda are not evidence, and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *See Project Release v. Prevost,* 722 F.2d 960, 969 (2nd Cir. 1983).

In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

---

[3] Defendants contend that plaintiff's response to the summary judgment motion should not be considered by the court because they assert that it is untimely. (Dkt. #40 at 3). Plaintiff's response, however, was timely under the "prison mailbox rule." *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (a document submitted by a prisoner is deemed to be filed the day the document is delivered to prison authorities for mailing to the court).

REPORT & RECOMMENDATION
PAGE - 3

1 *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts

2 showing how individually named defendants caused or personally participated in causing the harm

3 alleged in the Complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

4        Defendants argue that their motion for summary judgment should be granted on several

5 grounds.  However, the court need address only their argument that plaintiff has failed to present a

6 claim upon which relief can be granted.  Because the court agrees with this argument, it is

7 unnecessary to address defendants alternative grounds for summary judgment.

8        Plaintiff claims that his job termination was unjust and violated several provisions, chiefly the

9 Due Process Clause, of the Constitution.  His claim appears to rest on the assumption that prisoners

10 have a constitutional right to employment.  Defendants contend that there is no such constitutional

11 right, and accordingly, that his termination cannot form the basis for relief.

12        The court agrees with defendants.  There is simply no constitutional right to employment

13 while incarcerated.  As the Ninth Circuit explained, "[t]he discrete basic human needs that prison

14 officials must satisfy include food, clothing, shelter, sanitation, medical care, and personal safety. . . .

15 Enforced idleness, taken alone, simply does not deprive a prisoner of any of these basic needs."

16 *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (internal citations omitted).  *See also*

17 *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (there is no constitutional right to

18 rehabilitation).  Because there is no underlying right to employment, plaintiff cannot challenge his

19 job termination based upon any alleged failure to afford him due process protections.  *See generally*

20 *Sandin v. Connor*, 515 U.S. 472 (1995) (due process protections attach only when disciplinary action

21 constitutes an atypical, significant deprivation to prisoner).

22        In his response, plaintiff relies principally upon the Supreme Court decision in *Wolf v.*

23 *McDonnell*, 418 U.S. 539 (1974), which held that due process protections apply to certain prison

24 disciplinary proceedings which could result in sanctions such as the loss of good-time credit or the

25 imposition of solitary confinement.  Here, however, plaintiff suffered no such sanctions, as the only

26 consequence to the alleged time card fraud was the loss of his job.  Therefore, his reliance on *Wolf* is

REPORT & RECOMMENDATION  
PAGE - 4

misplaced. While the court recognizes that plaintiff places great value on his job, and the record reflects that he had received good evaluations prior to the time card incident (Dkt. #7, Ex. A), the loss of the job is not actionable under § 1983. Accordingly, defendants are entitled to summary judgment on the sole issue presented by this case and plaintiff's complaint and this action should be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this 6th day of June, 2007.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge